UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JASON LAMONT WARD,

    Defendant-Movant,

v.

UNITED STATES OF AMERICA,

    Plaintiff-Respondent.
_____/

Case No. 1:24-cv-1146

Honorable Paul L. Maloney

**OPINION AND ORDER**

Currently pending before the Court is Defendant-Movant Jason Lamont Ward ("Defendant")'s *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1.) For the reasons set forth below, Defendant's motion will be denied.

**I.    Background**

On June 28, 2022, a grand jury returned an Indictment charging Defendant with: (1) possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and (2) possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). *See* Indictment, *United States v. Ward*, No. 1:22-cr-85 (W.D. Mich.) (ECF No. 1). Defendant self-surrendered on July 7, 2022, and subsequently retained attorneys Anastase Markou and Kirsten Holz to represent him.

On September 2, 2022, Defendant, through counsel, filed a motion to suppress, seeking "suppression of the evidence found during the search of a home and the search of a phone, along with the fruits of each of these unconstitutional searches." *See* Mot. to Suppress, *id.* (ECF No. 22). The Court conducted a hearing regarding the motion on October 11, 2022. That same day, the

Court also conducted a change of plea hearing with respect to a plea agreement filed by the Government. The plea agreement provided that Defendant conditionally agreed to plead guilty to Counts One and Two of the Indictment. *See* Plea Agreement, *id.* (ECF No. 29, PageID.107). Defendant's plea was conditional because he reserved the right to appeal the denial of his motion to suppress. *Id.* The Court entered an order denying the motion to suppress on October 12, 2022. *See* Order, *id.* (ECF No. 30).

On January 13, 2023, the Government filed a joint motion to withdraw Defendant's guilty plea. *See* Mot., *id.* (ECF No. 43). The parties moved to withdraw Defendant's guilty plea on the basis of "new policies regarding charging, resolving, and sentencing in drug cases that involve mandatory minimum terms of imprisonment." *Id.* (ECF No. 43, PageID.156). The motion noted that Defendant intended to "enter a guilty plea to a superseding felony information." *Id.*

The Court conducted a hearing regarding the motion to withdraw on January 30, 2023, and entered an order granting the motion that same day. *See* Order, *id.* (ECF No. 46). The Court also conducted the change of plea hearing regarding Defendant's guilty plea to a superseding felony information. The Superseding Felony Information and new plea agreement were filed on January 31, 2023. *See* Information and Plea Agreement, *id.* (ECF Nos. 47, 49). In the new plea agreement, Defendant agreed to plead guilty to the sole charge in the Superseding Felony Information, charging him with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). *See* Plea Agreement, *id.* (ECF No. 49, PageID.163).

On April 24, 2023, the Court sentenced Defendant to 180 months of imprisonment, followed by three years of supervised release. *See* J., *id.* (ECF No. 63). Defendant subsequently appealed his conviction and sentence to the United States Court of Appeals for the Sixth Circuit. In an order entered on September 16, 2024, the Sixth Circuit granted the Government's motion to

dismiss Defendant's appeal based upon the appellate-waiver provision in Defendant's plea agreement. *See* 6th Cir. Order, *id.* (ECF No. 79). Defendant did not petition the United States Supreme Court for a writ of certiorari.

Defendant filed his § 2255 motion (ECF No. 1) and memorandum in support thereof (ECF No. 2) on October 31, 2024. In an order (ECF No. 5) entered on November 5, 2024, the Court directed the government to file a response to the motion. The government subsequently moved for an extension of time and an order authorizing release of information subject to attorney-client privilege. (ECF No. 6.) The Court granted that motion on December 31, 2024. (ECF No. 7.) After receiving a second extension of time (ECF Nos. 8, 11), the Government filed its response (ECF No. 12) on March 17, 2025. On April 2, 2025, the Court received from Defendant a motion seeking an extension of time until April 11, 2025, to file his reply. (ECF No. 14.) The Court granted that motion in an order (ECF No. 15) entered on April 3, 2025. The Court received Defendant's reply (ECF No. 16) on April 17, 2025.

## II.    Standard of Review

### A.    Merits

A prisoner may move to vacate his sentence under 28 U.S.C. § 2255 if he can demonstrate that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it "is otherwise subject to collateral attack." 28 U.S.C. § 2255. However, "Section 2255 does not provide relief for just any alleged error." *Bullard v. United States*, 937 F.3d 654, 658 (6th Cir. 2019). To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 485 (1986)).

### B.   Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a movant must prove that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant in a way that led to an unreliable or fundamentally unfair outcome. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, and viewed as of the time of counsel's conduct, and judicial scrutiny of counsel's performance must be highly deferential." *Roe v. Flores-Ortega*, 528 U.S.460, 477 (2000) (internal quotation marks omitted). Counsel is not ineffective unless he or she "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To establish prejudice, a movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694; *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc) ("[T]he threshold issue is not whether [movant's] attorney was inadequate; rather, it is whether he was so manifestly ineffective that defeat was snatched from the hands of probable victory.").

### C.   Evidentiary Hearing

The Court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No hearing is required if Defendant's allegations "cannot be accepted as true because they are contradicted by the record,

5

inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

### III.  Discussion

Defendant raises the following grounds for relief in his § 2255 motion:

I.  Counsel was ineffective during proceedings on the motion to suppress by failing to assert that the affidavit contained false and misleading information, and that when such information is excluded, the affidavit failed to set forth probable cause.

II.  Counsel was ineffective for failing to challenge a two-level enhancement for maintaining a premises for controlled substances.

III.  Counsel was ineffective for failing to challenge Defendant's receipt of criminal history points for a simple possession of marijuana offense.

IV.  Counsel was ineffective for failing to argue that a firearm enhancement under U.S.S.G. § 2D1.1 should not have applied.

(Mem. Supp. § 2255 Mot., ECF No. 2, PageID.15–16.) The government contends that Defendant's claims are meritless. (ECF No. 12.)

**A.  Ground I—Ineffective Assistance of Counsel Regarding Motion to Suppress**

As his first ground for relief, Defendant asserts that counsel was ineffective during proceedings regarding the motion to suppress. Defendant faults counsel for not challenging the fact that the affidavit in support of the search warrant contained false and misleading information, and that "the remaining information in the affidavit contained no probable cause." (Mem. Supp. § 2255 Mot., ECF No. 2, PageID.17.) Defendant avers that counsel should have requested a *Franks* hearing to challenge the affidavit. (*Id.*)

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend.

6

IV. The Fourth Amendment requires "only three things" with respect to search warrants. *Dalia v. United States*, 441 U.S. 238, 255 (1979). First, the warrant must be issued by a "neutral and detached" magistrate "capable of determining whether probable cause exists." *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972). Second, there must be a finding of probable cause. *See* U.S. Const. amend. IV. Third, the search warrant must "particularly describe the place to be searched, and the . . . things to be seized." *Id.*; *see also Maryland v. Garrison*, 480 U.S. 79, 84–85 (1987).

A defendant may be entitled to have a warrant voided when the warrant affiant's statements were deliberately false or made in reckless disregard for the truth and the affidavit's remaining content is insufficient to establish probable cause. *Franks v. Delaware*, 438 U.S. 154, 156 (1978). The burden rests on the defendant to establish by a preponderance of the evidence that the affidavit contains a reckless or deliberate falsehood and that with this material "set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Id.*

"A defendant challenging the validity of a search warrant's affidavit bears a heavy burden." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2009). The Sixth Circuit has noted that to be entitled to a *Franks* hearing, the defendant must "1) make[] a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) prove[] that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Young*, 847 F.3d 328, 348–49 (6th Cir. 2017). "A law enforcement officer's statement is only considered to be issued with 'reckless disregard for the truth' if a defendant shows that the affiant subjectively 'entertain[ed] serious doubts as to the truth of his [or her] allegations.'" *Bateman*, 945 F.3d at 1008 (quoting *United States v. Cican*, 63 F. App'x 832, 836 (6th Cir. 2003)). "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there

7

remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171–72.

In support of his argument, Defendant contends that the officer who drafted the affidavit in support of the search warrant, Officer Scott Bogard, falsely stated that the confidential informant (CI) from whom law enforcement officials seized methamphetamine during a traffic stop on March 30, 2022, "has been proven to be credible and reliable and has successfully completed two controlled buys prior." (Mem. Supp. § 2255 Mot., ECF No. 2, PageID.17.) Defendant claims that information is false because Officer Bogard had not had any contact with the CI prior to that date. (*Id.*)

Defendant has attached a copy of the search warrant and affidavit to his memorandum supporting his § 2255 motion. In the affidavit, Officer Bogard set forth that as of March 30, 2022, he was assigned to the Southwest Enforcement Team (SWET), which conducted "a strategic initiative operation in the City of Portage" on that date. (ECF No. 2-1, PageID.26.) On that date, SWET officers conducted traffic stops in higher crime areas. (*Id.*) During that operation, the CI was stopped, and officers seized 256 grams of methamphetamine. (*Id.*) The driver admitted that the methamphetamine was his and was assigned a CI number. (*Id.*) The CI told officers that nine of the ounces seized had come from "Jway," who Officer Bogard knew to be Defendant. (*Id.*, PageID.27.) The CI positively identified Defendant from a photograph. (*Id.*) The CI told officers that he had purchased methamphetamine from Defendant on at least five occasions, and that Defendant drove a gray Cadillac sedan without a plate. (*Id.*)

The next day, March 31, 2022, Officer Bogard was working undercover and made arrangements to purchase methamphetamine. (*Id.*) Officer Bogard made contact with an individual who knew "Jway" and who then called "Jway." (*Id.*) Officer Bogard overheard the conversation.

8

(*Id.*) Officer Bogard drove the individual to 1826 North Rose Street, where the individual entered the residence with recorded funds. (*Id.*) When the supplier came back out, he provided the purchased methamphetamine to Officer Bogard. (*Id.*, PageID.28.) Officer Bogard noted that Defendant "is registered to 1826 North Rose Street," and that there was a "gray colored Cadillac sedan" in the driveway of the residence. (*Id.*)

The Government has attached a sworn declaration from Officer Bogard to its response. (ECF No. 12-1.) In that declaration, Officer Bogard avers that all statements he set forth in the search warrant affidavit are true. (*Id.*, PageID.75–76, ¶¶ 6–7.) With respect to the CI in question, Officer Bogard states:

> In paragraph D of the affidavit, in reference to confidential informant 2022-0000175, I stated that "this confidential informant has been proven to be creditable [sic] and reliable and has successfully completed two controlled buys prior." This is also a true statement. I did not first meet confidential informant 2022-0000175 at the traffic stop on March 30, 2022. Rather, confidential informant 2022-000175 had previously worked with SWET and became a confidential informant in December 2021. Confidential informant completed two controlled buys in December 2021 and in January 2022 on a separate investigation. Confidential informant 2022-0000175 then became inactive. Confidential informant 2022-0000175 then became inactive. Confidential informant 2022-0000175 was then caught with methamphetamine during the traffic stop on March 30, 2022 and elected to cooperate with SWET.

(*Id.*, PageID.76, ¶ 7.) Defendant provides no evidence to counter Officer Bogard's declaration.

In light of the foregoing, Defendant cannot demonstrate that counsel was ineffective for not challenging any allegedly false statements in the affidavit and for not requesting a *Franks* hearing. Defendant's argument that Officer Bogard falsely stated that the CI was credible and had successfully worked as a CI before is entirely based upon his speculation and assumption that the CI did no work for SWET before the March 30, 2022, traffic stop. Moreover, even if paragraph D were stricken from the affidavit, there was still sufficient information to support the issuance of a search warrant. As noted above, Officer Bogard corroborated the CI's information by arranging a

9

controlled buy of methamphetamine through another individual, and when the controlled buy occurred, Officer Bogard observed a gray Cadillac sedan matching the description of Defendant's vehicle that was given by the CI. *Cf. United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000) (noting that "information received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information").

Accordingly, the Court cannot agree with Defendant that counsel was ineffective for failing to request a *Franks* hearing and for failing to challenge the inclusion of paragraph D in the affidavit. Defendant, therefore, is not entitled to relief with respect to ground I.

### B. Grounds II, III, IV—Ineffective Assistance of Counsel at Sentencing

In his three other grounds for relief, Defendant contends that counsel rendered ineffective assistance at sentencing by failing to raise certain sentencing changes. The Court considers each of Defendant's assertions of ineffective assistance below.

#### 1. Ground II—Failure to Challenge Enhancement for Maintaining a Premises for Controlled Substances

Prior to sentencing, the Probation Officer who prepared Defendant's Presentence Investigation Report (PSR) assessed a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) because Defendant "maintained a premises for the purpose of manufacturing or distributing a controlled substance." *See* PSR, *United States v. Ward*, No. 1:22-cr-85 (W.D. Mich.) (ECF No. 53, PageID.184). According to Defendant, counsel should have objected to this enhancement "because there was no evidence in the PSR or any other court record[] that showed [Defendant's] premises played a significant part in distributing drugs where the facts in the case concerns two day[s], and [Defendant] was only present one of those days." (Mem. Supp. § 2255 Mot., ECF No. 2, PageID.19.)

> The Sentencing Commission's commentary regarding application of § 2D1.1(b)(12) states:
>
> Subsection (b)(12) applies to a defendant who knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution.
>
> Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.
>
> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

*See* U.S.S.G. § 2D1.1 cmt. 17. The Sixth Circuit has noted that "the drug activity may occur in just a portion of a house, such as a 'room' or 'enclosure.'" *See United States v. Bell*, 766 F.3d 634, 637 (6th Cir. 2014). A court "assess[es] the primary or principal use of the home, or some part of it, by comparing the frequency of lawful to unlawful use." *Id.* Moreover,

> [e]vidence of drug storage or transactions typically supports applying this enhancement—but "so too will a litany of circumstantial evidence showing drug production on the premises." For instance, "tools of the trade," like laboratory equipment, scales, guns, ammunition, packaging materials, and cash, support a finding that the premises were maintained for manufacturing and distributing drugs.

*United States v. Lake*, No. 23-1454, 2024 WL 4977141, at *6 (6th Cir. Dec. 4, 2024) (internal citations omitted).

Based upon the Court's review of the record, any objection by counsel to this enhancement would have been entirely meritless. Defendant's PSR indicates that on March 31, 2022, law enforcement officials executed a search warrant for Defendant's residence. *See* PSR, *United States v. Ward*, No. 1:22-cr-85 (W.D. Mich.) (ECF No. 53, PageID.180.) As officers approached, they observed Defendant fleeing out of the back door and throwing a bag over the fence. *Id.* The bag

11

was retrieved and determined to contain methamphetamine. *Id.* (ECF No. 53, PageID.181). Officers also seized numerous firearms and ammunition, as well as additional quantities of methamphetamine, cocaine, fentanyl, a scale, two phones, and large amounts of currency. *Id.* (ECF No. 53, PageID.181–182). A search of Defendant's cell phone revealed "a large photograph of a large package of methamphetamine on [Defendant's] bed at 3:17 a.m. on March 28, 2022." *Id.* (ECF No. 53, PageID.183). During an interview with the Probation Officer, Defendant "stated he had methamphetamine he intended to distribute along with guns at his residence." *Id.*

Upon consideration of the foregoing, the two-level enhancement pursuant to § 2D1.1(b)(12) properly applied. As the Sixth Circuit has noted, "[t]he more the home looks like a business—due to the presence of, say manufacturing equipment, cash, weapons, and customers or employees—the more likely" the fact that the home is being used as a premises for controlled substances. *See United States v. Hagan*, 766 F. App'x 356, 359 (6th Cir. 2019). The Sixth Circuit has upheld the application of the enhancement when officers locate substantial quantities of illicit substances, large amounts of cash, and firearms. *See United States v. Tripplet*, 112 F.4th 428, 433 (6th Cir. 2024). Moreover, despite Defendant's argument that he was only at the residence for a day, the photograph retrieved from his phone suggests otherwise. In any event, the Sixth Circuit has noted that the enhancement may apply even when the premises at issue is used to store and distribute drugs "for only a short period of time." *See United States v. McFarland*, Nos. 20-5310/5587, 2021 WL 7367157, at *8 (6th Cir. Oct. 4, 2021).

Counsel is "not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel." *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (noting that "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial"). As discussed above, any challenge to the

12

§ 2D1.1(b)(12) enhancement by counsel would have been entirely meritless. Defendant, therefore, is not entitled to relief with respect to ground II.

### 2. Ground III—Failure to Challenge Criminal History Points

Defendant's PSR indicated that he had a criminal history score of one, placing him in criminal history category I. *See* PSR, *United States v. Ward*, No. 1:22-cr-85 (W.D. Mich.) (ECF No. 53, PageID.186). Defendant's sole criminal history point was assessed for a 2015 arrest and conviction for possession of marijuana in the 8th District Court in Kalamazoo, Michigan. *See id.* (ECF No. 53, PageID.185). The PSR reflects that Defendant was initially sentenced to six months of probation, but that he violated probation on at least two occasions. Ultimately, his probation was terminated "without improvement." *Id.* (ECF No. 53, PageID.186).

Defendant now contends that counsel was ineffective for not challenging this criminal history point because, had counsel done so, "there was a basis that [Defendant] would have benefited from a two[-]point reduction from his base offense level." (Mem. Supp. § 2255 Mot., ECF No. 2, PageID.21.) Defendant contends that possession of marijuana is a misdemeanor under Michigan law, and that starting in 2020, individuals convicted of one or more misdemeanor marijuana offenses could apply to have the conviction or convictions set aside. (*Id.*) Defendant also references an executive order signed by President Biden regarding expungement of all "federal possession of marijuana charges." (*Id.*)

First, any suggestion by Defendant that he should not have received one criminal history point because his prior conviction is a misdemeanor is misplaced. The Sentencing Guidelines specifically provide that, except for certain offenses, "[s]entences for misdemeanors and petty offenses are counted." *See* U.S.S.G. § 4A1.2(c)(1). Possession of marijuana is not one of the excepted offenses. *See id.*

13

Furthermore, while the record does not provide any suggestion that Defendant has ever applied to have his possession of marijuana conviction set aside, he would not be entitled to relief on that basis anyway. This Court recently considered the issue of whether a defendant is entitled to § 2255 relief on the basis that a prior possession of marijuana conviction had been set aside. *See Mizori v. United States*, No. 1:23-cv-458, 2024 WL 4562679, at *3 (W.D. Mich. Oct. 24, 2024). This Court rejected Mizori's argument, stating:

> The Sentencing Guidelines expressly provide that "[s]entences for expunged convictions are not counted [when computing criminal history], but may be considered under § 4A1.3 (Departures Based on Inadequacy of Criminal History Category (Policy Statement))." *See* USSG § 4A.1.2(j). The commentary to § 4A1.3 provides further detail. Specifically, the commentary states:
>
>> Sentences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or (B) have been ruled constitutionally invalid in a prior case are not to be counted. With respect to the current sentencing proceeding, this guideline and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law (e.g., 21 U.S.C. § 851 expressly provides that a defendant may collaterally attack certain prior convictions).
>
> *Id.*, cmt. 6. Furthermore, with respect to pardons and convictions that are set aside, the commentary states:
>
>> A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, e.g., in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted. However, expunged convictions are not counted. § 4A1.2(j).
>
> *Id.*, cmt. 10.
>
> The Sixth Circuit has adopted the definition of "expunge" set forth in *Black's Law Dictionary,* which defines "expunge" as "[t]o erase or destroy." *See United States v. Shor*, 549 F.3d 1075, 1078 (6th Cir. 2008) (citing *Black's Law Dictionary* (8th ed. 2004)). Here, although Defendant's prior conviction for possession of marijuana was set aside, it was not expunged because the records were not deleted, stricken, or destroyed. Instead, the order granting Defendant's application to set aside the conviction indicates that the set aside merely resulted in the case being

14

> made non-public. (ECF No. 8.) While state law provides that once a conviction is set aside, the defendant is "considered not to have been previously convicted" for all "purposes of the law," *see* Mich. Comp. Laws § 780.622(1), "the fact of the matter remains that [Defendant] was convicted of a crime and a record of that crime continues to exist." *Awad v. Reilly*, Nos. 357544, 357550, 2022 WL 17997788, at *4 (Mich. Ct. App. Dec. 29, 2022). Moreover, under state law, the non-public record of a conviction that has been set aside may be provided to, *inter alia*, "a court of competent jurisdiction" for, among other reasons, "[t]he court's consideration in determining the sentence to be imposed upon conviction for a subsequent offense that is punishable as a felony." Mich. Comp. Laws § 780.623(2)(c).
>
> Furthermore, Defendant has not demonstrated that his possession of marijuana conviction was set aside for reasons of constitutional invalidity, innocence, or errors of law, as required under USSG § 4A1.2 cmt. 6. Michigan state law provides for "[a] rebuttable presumption that a conviction for a misdemeanor marihuana offense sought to be set aside by an application was based on activity that would not have been a crime if committed on or after December 6, 2018." *See* Mich. Comp. Laws § 780.621e(4). The presumption may be rebutted by evidence presented by the prosecuting agency that "the conduct on which the applicant's conviction was or convictions were based would constitute a criminal violation of the laws of this state or a political subdivision of this state if it had been committed on or after December 6, 2018." *Id.* However, the prosecuting agency must respond to the application within 60 days, and if no response is filed within that time, the convicting court "must within 21 days enter an order setting aside the conviction or convictions." *See* Mich. Comp. Laws § 780.621e(4)–(5). Nowhere in the order granting Defendant's application to set aside the conviction does it state that it was set aside for reasons of constitutional invalidity, innocence, or errors of law. Thus, even though Defendant's prior conviction has been set aside, it still qualifies as a prior conviction for purposes of determining Defendant's criminal history in this Court. *See United States v. Cohen*, No. 09-20326, 2024 WL 83249, at *2 (E.D. Mich. Jan. 8, 2024) (concluding the same and rejecting a § 2255 motion premised upon the same argument).

*Mizori*, 2024 WL 4562679, at *3–4. In light of the foregoing, even if Defendant had successfully applied to have his misdemeanor conviction set aside, it still would have qualified as a prior conviction for purposes of Defendant's criminal history score. Counsel, therefore, cannot be deemed ineffective for failing to assert a challenge to the scoring of Defendant's misdemeanor conviction.

In any event, even if Defendant's conviction had been set aside and could no longer be scored, Defendant cannot show that the resulting guidelines range would fall below the sentence

he received. Defendant's total offense level was 39, and as noted above, he fell within criminal history category I. *See* PSR, *United States v. Ward*, 1:22-cr-85 (W.D. Mich.) (ECF No. 53, PageID.198). Based upon those levels, the Guidelines called for 262 to 327 months of imprisonment; however, because the maximum sentence authorized by statute was 240 months, "the guideline term of imprisonment [was] 240 months." *Id.* A defendant with zero criminal history points still falls within criminal history category I. *See generally* U.S.S.G. ch. 5, Pt. A (Sentencing Table). Thus, even with no criminal history points, Defendant would have fallen within the same Guidelines range.

As noted above, Defendant contends that counsel should have objected to the scoring of his misdemeanor conviction so that Defendant could be eligible for a two-point reduction in his base offense level. Defendant does not set forth what Guidelines provision he refers to, but the Government has construed his assertion to be a reference to Amendment 821. As an initial matter, Amendment 821 to the Sentencing Guidelines went into effect on November 1, 2023, well after Defendant's sentencing. *See* Amendment 821, https://www.ussc.gov/guidelines/amendment/821 (last visited Mar. 27, 2025). Thus, any suggestion that counsel was ineffective for failing to assert an argument relying on Amendment 821 is misplaced.

For purposes of Defendant's argument, Amendment 821 added § 4C1.1 to the Sentencing Guidelines. *See id.* That section provides that if a defendant meets certain criteria, he or she is entitled to a two-point reduction of his or her offense level. *See* U.S.S.G. § 4C1.1(a). All criteria must be met for the adjustment to apply. *Id.* Those criteria include not receiving any criminal history points, as well as a finding that "the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." *Id.* § 4C1.1(a)(1), (7). As discussed *infra*,

16

however, Defendant appropriately received a two-level enhancement for possession of firearms in connection with his offense. Defendant, therefore, would not be entitled to relief under Amendment 821, even if it had been in effect at the time of his sentencing.[1]

For all the foregoing reasons, Defendant has failed to demonstrate that counsel was ineffective for failing to challenge the scoring of his misdemeanor possession of marijuana conviction. Defendant, therefore, is not entitled to relief with respect to ground III.

### 3.    Ground IV—Failure to Challenge § 2D1.1 Enhancement

The Probation Officer who prepared Defendant's PSR assessed a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) because Defendant "possessed at least three firearms." *See* PSR, *United States v. Ward*, No. 1:22-cr-85 (W.D. Mich.) (ECF No. 53, PageID.184). Defendant now contends that counsel was ineffective for failing to challenge that enhancement on the basis that "it was clearly improbable that the firearm[s] [were] connected to the drug offense, as [Defendant] legally purchased all firearms found way before the offense occurred." (Mem. Supp. § 2255 Mot., ECF No. 2, PageID.20.) Defendant also suggests that there was no evidence that he "took any of the firearms out of the home for drug trafficking, nor was there any evidence that when others c[a]me into the home," they saw Defendant displaying the firearms. (*Id.*)

Section 2D1.1(b)(1) provides that the offense level is increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed." *See* U.S.S.G. § 2D1.1(b)(1). The Sentencing Commission's commentary provides:

> Definitions of "firearm" and "dangerous weapon" are found in the Commentary to § 1B1.1 (Application Instructions). The enhancement for weapon possession in

---

[1] The Court notes that on February 12, 2024, Defendant filed a *pro se* motion for modification or reduction of sentence pursuant to Amendment 821. *See* Mot., *United States v. Ward*, No. 1:22-cr-85 (W.D. Mich.) (ECF No. 73). Ultimately, the Court dismissed that motion without prejudice because Defendant's direct appeal of his conviction and sentence was still pending. *See* Order, *id.* (ECF No. 78).

17

> subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet.

*Id.* cmt. 11(A). In order for the enhancement to apply, "the government must first establish, by a preponderance of the evidence, that '(1) the defendant actually or constructively 'possessed' the weapon, and (2) such possession was during the commission of the offense" or during relevant conduct to the offense." *United States v. Moore*, Nos. 24-1427/1441/1446, 2025 WL 789557, at *12 (6th Cir. Mar. 12, 2025) (quoting *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007)). "Once the government meets its burden of showing that the defendant possessed a weapon, a presumption arises that 'the weapon was connected to the offense.'" *United States v. Darwich*, 337 F.3d 645, 665 (6th Cir. 2003) (quoting *United States v. Hough*, 276 F.3d 884, 894 (6th Cir. 2002)). A defendant may rebut this presumption by "demonstrat[ing] that it was clearly improbable that the weapon was *connected* to the offense." *Moore*, 2025 WL 789557, at *12 (citations omitted) (internal quotation marks omitted) (emphasis in original).

Here, in Defendant's plea agreement, the parties stipulated to the fact that during the search of Defendant's residence, officers seized three firearms and assorted ammunition. *See* Plea Agreement, *United States v. Ward*, No. 1:22-cr-85 (W.D. Mich.) (ECF No. 49, PageID.165). The parties stipulated further that Defendant "possessed the firearms to protect the methamphetamine and drug proceeds found inside the residence." *Id.* By signing the agreement, Defendant indicated that he "underst[ood] the terms of this agreement, and [he] voluntarily agree[d] to those terms." *Id.* (ECF No. 49, PageID.165). During the change of plea hearing, Defendant admitted the facts set forth in the written factual basis were true. Change of Plea Hr'g Tr., *id.* (ECF No. 67, PageID.271).

18

Any challenge to the § 2D1.1(b)(1) enhancement by counsel would have been entirely meritless. First, even though Defendant avers that he legally purchased the firearms, "how [Defendant] acquired the weapons says nothing about whether he used them in connection with his [drug] trafficking." *See United States v. Thomas*, No. 23-5010, 2024 WL 182324, at *3 (6th Cir. Jan. 17, 2024). Moreover, by stipulating to the fact that he possessed the firearms to protect the drugs and drug proceeds inside the residence, there was no plausible way for Defendant, through counsel, to rebut the presumption noted above. The PSR reflects that the firearms and ammunition were found in Defendant's bedroom, along with large amounts of cash and various amounts of controlled substances. *See* PSR, *United States v. Ward*, No. 1:22-cr-85 (W.D. Mich.) (ECF No. 53, PageID.181). Defendant provides no evidence to suggest that it was "clearly improbable" that the firearms were connected to his offense. Because counsel is "not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel," *Ludwig*, 162 F.3d at 459, Defendant is not entitled to relief with respect to ground IV.

In sum, the record before the Court supports a conclusion that all of Defendant's grounds for relief are meritless. Moreover, there is no need for the Court to conduct an evidentiary hearing. Accordingly, Defendant's § 2255 motion (ECF No. 1) will be denied.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(B), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Defendant has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth

by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined Defendant's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Defendant's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Defendant's claims was debatable or wrong. Therefore, the Court will deny Defendant a certificate of appealability. Moreover, although Defendant has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Defendant might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## V.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

A separate judgment will follow. *See Gillis v. United States*, 729 F.3d 641, 643 (6th Cir. 2013) (requiring a separate judgment in habeas proceedings).


Dated:   April 24, 2025                                  /s/ Paul L. Maloney
                                                                                  Paul L. Maloney
                                                                                  United States District Judge